# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MATTHEW ARTHUR FIELDS,

    Petitioner,

vs.

ROBERT LEGRAND, et al.,

    Respondents.

Case No. 3:11-cv-00341-RCJ-WGC

**ORDER**

    Before the court are the petition for a writ of habeas corpus (ECF No. 6) and respondents' answer (ECF No. 48). The court finds that petitioner is not entitled to relief, and the court denies the petition.

    In state district court, petitioner was charged with (I) causing the death of a person by driving a vehicle while under the influence of alcohol, (II) leaving the scene of an accident involving the death of a person, and (III) conspiring to attempt to suborn perjury. The first two charges were felonies, the third charge was a gross misdemeanor. Ex. 2 (ECF No. 10-2). Petitioner agreed to plead guilty as charged. The parties were free to argue whether the sentences for counts I and II would run concurrently or consecutively. The prosecution agreed to recommend that the sentence for count III would run concurrently with the sentences for the other two counts. Ex. 12 (ECF No. 10-12). The state district court sentenced petitioner to a minimum term of six years and a maximum term of eighteen years for count I, a minimum term of six years and a maximum term of fifteen years for count II, to run consecutively to the sentence for count I, and a term of twelve months for count III, to run concurrently with the sentences for counts I and II. Petitioner received thirteen days

of credit for time served, because he was out on bail for most of the time between arrest and sentencing. The state district court also recommended that petitioner be placed into the "AB 305 program" for treatment of alcoholism. Ex. 17 (ECF No. 10-16). See also Nev. Rev. Stat. §§ 209.425 et seq. (describing treatment program). Petitioner did not appeal.

Petitioner then filed a post-conviction habeas corpus petition in the state district court. Ex. 18 (ECF No. 10-17). A different judge was assigned to consider the petition. Ex. 21 (ECF No. 10-20). The state district court held an evidentiary hearing. Ex. 28 (ECF No. 11-3). The state district court denied the petition. Ex. 30 (ECF No. 11-5). Petitioner appealed. The Nevada Supreme Court affirmed summarily. Ex. 42 (ECF No. 11-17).

Petitioner then commenced this action. The court determined that petitioner had not exhausted his state-court remedies for some of his grounds. ECF No. 19. The court stayed the action while petitioner returned to state court. ECF No. 23.

The state courts determined that petitioner's subsequent state habeas corpus petition was barred as untimely and successive. Ex. 53 (ECF No. 31-12); Ex. 70 (ECF No. 32-15).

Petitioner returned to this court. The court dismissed parts of ground 2, parts of ground 4, and all of ground 6 because they were procedurally defaulted. ECF No. 42. The answer followed.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 562 U.S. 86, 98 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or

   that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 562 U.S. at 100. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

   [E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

   Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 562 U.S. at 102.

   As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 103.

All remaining claims are claims that petitioner's lawyer, Dennis Cameron, provided ineffective assistance. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

   Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under

Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 105 (2011) (citations omitted).

In ground 1, petitioner claims that trial counsel did not litigate the charges of leaving the scene and conspiring to suborn perjury, when petitioner had defenses to those charges. The Nevada Supreme Court summarily affirmed the state district court, which held:

> Fields also claims that counsel was ineffective in advising him to accept the plea bargain because, he claims, he had defenses to some of the charges. Petitioner contends, on the charge of conspiring to suborn perjury, his alleged co-conspirator testified that she was a feigned co-conspirator and had no intention of actually trying to persuade a witness to testify that Fields got drunk after he killed the child with his vehicle. A feigned accomplice may indeed create a theory of defense, but that does not mean that counsel must necessarily conclude that the story will be believed and that the accused should therefore stand trial.
>
> The proposed defense to the charge of leaving the scene of the fatal collision, in violation of NRS 484.219, was based on the theory that the violation was technical and that Fields actually left in order to secure help for the victim. The court notes that NRS 484.219 is not a specific intent crime.
>
> Cameron testified credibly that he and his client jointly evaluated the likelihood of prevailing at trial, and weighed that against the potential benefits of having the defendant take responsibility for his crime. Ultimately, the decision was made by Fields to attempt to seek leniency by taking responsibility for the crime and pleading guilty.
>
> The court is persuaded that Cameron talked with his client at length about the evidence and the likelihood of prevailing at trial. Fields then made his own decision. There is no allegation that there was any objective flaw in counsel's advice. Instead, the contention seems to be that the court should, with the benefit of hindsight, declare that the advice was subjectively unreasonable. The legal standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984) demands an objective standard. Means v. State, 120 Nev. 1001, 1011-1013, 103 P.3d 25, 32-33 (2004) citing Strickland v. Washington. Furthermore, counsel's advice and Petitioner's desire to take responsibility for the criminal charge was a strategic decision, designed to achieve a favorable result at sentencing. This court will not second-guess the strategic decisions of counsel and his client.

Ex. 30, at 4-5 (ECF No. 11-5, at 5-6). Cameron's testimony at the evidentiary hearing is consistent with the state district court's summary of that testimony. See Ex. 28, at 7-10 (ECF No. 11-3, at 8-11). The state district court's determination that Cameron's advice was not objectively unreasonable is itself reasonable. The prosecution had enough evidence to convict petitioner on all three charges. He was driving drunk and speeding when he struck and killed a 13-year-old girl. He left the area with witnesses watching and calling 911. The damage to the vehicle caused by the

1  collision left a trail of fluid for the police to follow. He asked his mother to ask one of the residents
2  of the house where he fled to state that he started drinking after he arrived at the house. Petitioner
3  had no defense to killing the girl. His defense to the hit-and-run charge was not strong. He argues
4  that he drove to a friend's house to call the police. However, at sentencing the prosecution
5  presented the testimony of a person who had seen petitioner commit another hit-and-run years
6  before. Ex. 16, at 22-28 (ECF No. 10-15, at 23-29). If petitioner went to trial, the prosecution
7  would have presented the same testimony to show that petitioner actually knew that he could not
8  leave the area after a collision.[1] Furthermore, other people were in the area who could have called
9  the police. Petitioner's defense to the charge of conspiring to attempt to suborn perjury also was not
10 strong. At sentencing, the prosecution presented the testimony of a person who recorded jail
11 telephone conversations between petitioner and his mother. The recording was played but not
12 transcribed. However, the context indicates that petitioner did ask his mother to ask the mother of
13 his friend Shawn to lie to the police. Ex. 16, at 29-31 (ECF No. 10-15, at 30-32). Petitioner's
14 defense was that his mother was afraid that he was suicidal and that she was agreeing to anything to
15 keep him from attempting suicide. Perhaps the jury would have believed petitioner's defense, and
16 perhaps they would not. However, this court cannot say that the state district court's determination
17 was unreasonable.

18   Petitioner's plea had one benefit. Petitioner wants to participate in a alcohol-abuse treatment
19 program, which would let him spend what otherwise would be up to his last year in prison in
20 residential confinement.[2] To the extent that acceptance of responsibility is a factor in qualifying for
21 that program, petitioner helped himself by pleading guilty. To the extent that a judge's
22 recommendation helps petitioner qualify for the program, petitioner also obtained that by pleading
23 guilty. Ground 1 is without merit.

---

[1] Petitioner's arguments that the prior hit-and-run was a misdemeanor, was not his fault, and did not involve alcohol all miss the point of why the prosecutor presented this testimony. See Ex. 30, at 49-50 (ECF No. 11-3, at 50-51).

[2] Petitioner questions his eligibility for this program. The court addresses his arguments in its discussion of other grounds for relief.

Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on ground 1.

The remaining claims in grounds 2, 3, and 4 have some repetition and overlap.[3] The court will address them collectively. Petitioner argues that he received ineffective assistance of counsel because (1) counsel failed to investigate petitioner's eligibility for the alcohol-abuse treatment program, (2) counsel improperly advised petitioner that his time in prison would be reduced by the alcohol-abuse treatment program, and (3) counsel improperly advised petitioner that his prison terms would run concurrently, not consecutively.

On the first two claims, the state district court held:

> Fields also claimed that the sentence was based on Judge Perry's ignorance of the practical effect of his sentence. This claim, standing alone, could have been raised on direct appeal and is therefore barred. NRS 34.810. The court also finds that it is factually unproven. The fact that the court imposed sentence after the prosecutor commented on the effects of the program described in NRS 209.425 et seq., does not necessarily lead to the conclusion that the sentence was imposed because of those comments. [Footnote: The program is known in the vernacular as the "305" program. That seems to be a reference to AB 305, enacted in 1991 and codified at NRS 209.425 et seq.] The court notes that Fields was invited to present testimony from Judge Perry but declined. The court declines to draw the inference that Judge Perry was misled or was ignorant of the ramifications of the sentence he imposed. Instead, the court finds that the record reflects that Judge Perry knew the law and properly applied it in his imposition of sentence.
>
> The actual claim concerning the prosecutor's comments and the effect on the judge seems to be a claim that counsel was ineffective in failing to point out that the prosecutor's analysis of the "305" program was incorrect. This claim is repelled by the record. The sentencing transcript reveals that trial counsel did indeed discuss the effect of the program, if it was available.
>
> Fields also claims that his plea was the product of ineffective assistance of counsel because counsel led him to believe that he was certain to be qualified for the "305" program. There was conflicting evidence presented at the hearing. The court finds that the evidence supporting the claim is not sufficiently credible to lead to the conclusion that Cameron told

---

[3]Regarding ground 4, respondents answer petitioner's claim that counsel provided ineffective assistance at sentencing by presenting only letters, and not testimony, from petitioner's family in mitigation. The court already has found that this part of ground 4 was procedurally defaulted. ECF No. 42, at 3.
The confusion probably results from the Nevada Supreme Court's summary decision in the appeal from the denial of petitioner's first state post-conviction habeas corpus petition, and thus the use of the state district court's order in reviewing the state-court decisions. Petitioner raised the claim regarding mitigating evidence with the state district court, which denied the claim on the merits. Ex. 30, at 3-4 (ECF No. 11-5, at 4-5). Petitioner did not present the claim to the Nevada Supreme Court. Even though the Nevada Supreme Court summarily affirmed the state district court, that decision applies only to the claims that petitioner presented on appeal.

> his client that he was certain to qualify for the "305" program, or that the decision to plead guilty was based on any such advice. The court notes that when the issue of the program came up at the sentencing hearing, Cameron mentioned the potential effect but with the caveat that the comments applied only if Fields was qualified. The court is persuaded that Cameron knew Fields was not necessarily automatically qualified for the "305" program and that Cameron advised his client accordingly. The Court has no doubt that both Cameron and the client hoped he would be the beneficiary of the "305" program but that hope is not sufficient to conclude that the plea was anything other than a knowing and voluntary plea.

Ex. 30, at 2-3 (ECF No. 11-5, at 3-4).

The prosecutor might have misstated the effect of the alcohol-abuse treatment program. At sentencing, he said:

> I propose 6 to 18 years rather than the 4 and a half to 15 years that the Division [of Parole and Probation] recommends. And as Mr. Cameron pointed out, he's going to recommend—he's going to ask you to recommend the 305 program. <u>That means he's going to do half his term.</u>

Ex. 16, at 39 (ECF No. 10-15, at 40) (emphasis added). The prosecutor's reference to half of petitioner's term refers only to the sentence for count I, death resulting from driving under the influence. The prosecutor had a separate argument for leaving the scene. <u>Id.</u> at 40-41 (ECF No. 10-15, at 41-42). If petitioner otherwise would serve the full amount of his minimum term, then the prosecutor's statement was incorrect. However, the defense counsel quickly corrected the prosecutor, stating that at best petitioner could receive up to one year of house arrest. <u>Id.</u> at 45 (ECF No. 10-15, at 46). <u>See also</u> Nev. Rev. Stat. §§ 209.427(1), 209.429(1).

Petitioner has not demonstrated that he actually is ineligible for the alcohol-abuse treatment program. Instead, it appears that at the time of his sentencing and his state post-conviction proceedings, it was too early for him to enter the program. An assignment to the program "must be, to the extent that the period reasonably can be predicted, for the year, or as much thereof as practicable, immediately preceding the date the offender is due to be released from prison, either on parole or at the expiration of the offender's term." Nev. Rev. Stat. § 209.427(1). On August 17, 2007, the state district court sentenced petitioner to two consecutive terms of six years. Ex. 16 (ECF No. 10-15). The state district court held its post-conviction evidentiary hearing on August 20, 2009. Ex. 28 (ECF No. 11-3). On cross-examination at the same hearing, petitioner acknowledged that the time for him to qualify for the program had not yet arrived. <u>Id.</u> at 56-57 (ECF No. 11-3, at 57-58).

-7-

Under these circumstances, the state district court reasonably could have concluded that Cameron did not provide ineffective assistance with his advice that petitioner could benefit from the alcohol-abuse treatment program.

As for the sentence structure, the state district court held:

> Fields also contends that his plea was not a knowing plea because counsel predicted and argued for concurrent sentences. A subjective expectation of a specific sentence is not grounds for relief. Rouse v. State, 91 Nev. 677, 541 P.2d 643 (1975). The record reflects Fields signed a plea memorandum and was thoroughly canvassed by the court. Fields was clearly advised of the possibility of consecutive sentences. See Langarica v. State, 107 Nev. 932, 822 P.2d 1110 (1991).

Ex. 30, at 5 (ECF No. 11-5, at 6). If Cameron actually did tell petitioner in private that the judge would impose the sentences concurrently, then petitioner learned otherwise in the change-of-plea negotiations. First, the plea agreement stated that the sentences might be concurrent or consecutive, and that the parties were free to argue for concurrent or consecutive sentences on counts I and II. Ex. 12, at 5 (ECF No. 10-12, at 6). Second, Cameron himself stated at the start of the change-of-plea hearing that both prosecution and defense are free to argue for concurrent or consecutive sentencing. Ex. 13, at 4 (ECF No. 10-13, at 11). Third, at that hearing the state district court judge asked petitioner if he understood that the sentences could run concurrently or consecutively, and petitioner stated that he understood. Id. at 10 (ECF No. 10-13, at 11). In the post-conviction proceedings, the state district court reasonably could have determined that counsel did not provide ineffective assistance to petitioner on the sentence structure.

Reasonable jurists would not find the court's determinations regarding the remaining parts of grounds 2, 3, and 4 to be debatable or wrong, and the court will not issue a certificate of appealability for these grounds.

Ground 5 is a claim that Cameron provided ineffective assistance because he did not file a direct appeal. On this issue, the state district court held:

> Petitioner claimed he instructed his lawyer, Dennis Cameron, to file a direct appeal. Dennis Cameron testified credibly that he and his client explored the various legal options available to Petitioner and he advised his client that an appeal following a plea of guilty was likely to result in delay but no relief. Cameron testified that Fields accepted his advice to by-pass the direct appeal in favor of seeking post-conviction relief. The court finds that Cameron met his duty of giving frank legal advice concerning the pros and cons of a direct appeal and

> Fields ultimately decided not to pursue a direct appeal. The Court finds this claim is not supported by the record or testimony.

Ex. 30, at 2 (ECF No. 11-5, at 3). The analysis of whether a defendant was denied a direct appeal due to ineffective assistance of counsel has four steps. First, has the defendant instructed counsel to file an appeal or asked not to take an appeal?

> [A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . . At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.

Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). Second, if the defendant did not give instructions, has counsel consulted with the defendant about a direct appeal?

> We employ the term "consult" to convey a specific meaning-advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. If counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the <u>defendant's express instructions</u> with respect to an appeal.

Id. at 478 (emphasis added). Third, if counsel did not consult with the defendant about the direct appeal, was that deficient performance by counsel?

> [C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known.

Id. at 480 (citation omitted). Fourth, if the lack of consultation was deficient performance, was the defendant prejudiced? "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484.

In petitioner's case, the analysis stops at the second step. Cameron testified that he consulted with petitioner about a direct appeal and that petitioner did not expressly instruct him to appeal. Ex. 28, at 12-13, 18-19 (ECF No. 11-3, at 13-14, 19-20). Petitioner testified that Cameron

never consulted with him. Id. at 53-54 (ECF No. 11-3, at 54-55). The state district court was the judge of credibility, and this court cannot say that the state district court was unreasonable in believing Cameron over petitioner. Ground 5 is without merit.

Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on ground 5.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (ECF No. 6) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this action.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: This 6th day of March, 2017.

_____
ROBERT C. JONES
United States District Judge